**JUDGE BUCHWALD** 07 CV 4032

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Scott A. Levin (SL-9041)
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
88 Pine Street – 24th Floor
New York, New York 10005
(212) 483-9490
Attorneys for Plaintiff
The Travelers Indemnity Company,
successor in interest by merger to
Gulf Insurance Company

MAY 2 3 2007

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY, successor in interest by merger to GULF INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>MODERN INDUSTRIES, INC., RONEN KOZOKHAR (a/k/a RONEN KOZOHAR), and ALLA KRASNER,<br><br>Defendants. | CIVIL ACTION NO.:<br><br>COMPLAINT |

Plaintiff, The Travelers Indemnity Company, successor in interest by merger to Gulf Insurance Company ("Travelers" or "Surety"), by way of Complaint against Modern Industries, Inc. (hereinafter referred to as either the "Principal" or "Modern"), Ronen Kozokhar (a/k/a Ronen Kozohar) and Alla Krasner, upon information and belief, alleges the following:

**PARTIES**

1. At all relevant times hereinafter mentioned, The Travelers Indemnity Company, successor in interest by merger to Gulf Insurance Company, was and is a corporation organized and existing under the laws of the State of Connecticut.

2. Upon information and belief, Modern is a New York Corporation with its principal place of business located at 120 49th Street, Brooklyn, New York.

3. Upon information and belief, Ronen Kozokhar (a/k/a Ronen Kozohar) is an individual residing at 119 Langham Street, Brooklyn, New York, and/or 2504 West 2nd Street, Brooklyn, New York.

4. Upon information and belief, Alla Krasner is an individual residing at 1745 East 12th Street, Brooklyn, New York.

5. Defendants Modern, Ronen Kozokhar (a/k/a Ronen Kozohar) and Alla Krasner shall be collectively referred to herein as the "Indemnitors."

## JURISDICTION

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that this is an action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

## FIRST COUNT
### (Contractual Indemnification)

7. Paragraphs 1 through 6 are re-alleged with the same force and effect as if set forth at length herein.

8. On or about May 14, 2002, in consideration for and in order to induce Travelers, as surety, to issue bonds on behalf of Modern, as principal, the Indemnitors executed and delivered a General Agreement of Indemnity (the "Indemnity Agreement") in favor of Travelers, as indemnitee.

9. A true and accurate copy of the Indemnity Agreement is attached hereto as **Exhibit A**.

10. Following the Indemnitors' execution of the Indemnity Agreement, Modern entered into construction contracts with the New York City Housing Authority ("Housing") and obtained certain payment and/or performance bonds from Travelers (the "Bonds") in connection with the construction contract (the "Bonded Contracts").

11. Travelers has incurred substantial un-reimbursed losses, costs and expenses in connection with the Bonds.

12. Travelers may incur additional losses as well as further costs and expenses in connection with the Bonds.

13. The Indemnitors have failed to honor their obligations under the Indemnity Agreement.

WHEREFORE, Travelers demands judgment against the Indemnitors, jointly and severally:

    a.    for damages, together with appropriate interest thereon;

    b.    for an order declaring each of the Indemnitors jointly and severally liable to Travelers for all loss, costs, expense, and attorneys' fees incurred or to be incurred by Travelers as a result of its having executed the Bonds;

    c.    for an order compelling each Indemnitor to perform their obligations to Travelers under the Indemnity Agreement and the Bonds;

    d.    for an order directing the Indemnitors to place Travelers with collateral in the form of money, property, liens or security interests in property, as determined by Travelers to be ample collateral security for its outstanding obligations under the Bonds;

e.    for an order compelling the Indemnitors to furnish Travelers with any and all information concerning the obligations incurred in connection with the Bonded Contracts;

f.    for an order compelling the Indemnitors to permit Travelers to examine and copy the books, records and accounts of the Indemnitors; and

g.    for reasonable attorneys' fees, cost of suit, and any other relief that the Court deems just and proper.

### SECOND COUNT
(Subrogation)

14.    Paragraphs 1 through 13 are re-alleged with the same force and effect as if set forth at length herein.

15.    As a result of having executed the Bonds, Travelers has satisfied, and may continue to satisfy claims against the Bonds in connection with the performance of the Bonded Contracts.

16.    To the extent that Travelers has made, or will make, payments to extinguish debts arising from the Bonded Contracts, Travelers has, and will, become subrogated to the rights of others who have, will have, or have had, claims against Modern in connection with the Bonded Contracts.

WHEREFORE, Travelers demands judgment against Modern:

a.    for damages in an amount equal to any payments made by Travelers to discharge Modern's debts and obligations incurred in connection with the Bonded Contracts;

b.  for an order declaring Modern liable to Travelers in an amount equal to any further payments that Travelers becomes obligated to make pursuant to its obligations under the Bonds, together with appropriate interest thereon; and

c.  for reasonable attorneys' fees, cost of suit, and any other relief that the Court deems just and proper.

## THIRD COUNT
### (Common Law Indemnification)

17. Paragraphs 1 through 16 are re-alleged with the same force and effect as if set forth at length herein.

18. As between Travelers and Modern, Travelers is secondarily obligated, while Modern is primarily obligated, and Modern owes a duty to Travelers to procure the discharge of all obligations arising from the Bonds.

19. Travelers is entitled to be indemnified by Modern for any and all loss incurred under the Bonds.

20. Modern has failed to honor its obligations arising from the Bonds.

WHEREFORE, Travelers demands judgment against Modern:

a.  for damages in an amount sufficient to indemnify Travelers from any and all liability, cost and expense incurred as a result of its having executed the Bonds, together with appropriate interest thereon;

b.  for an order declaring Modern liable to Travelers for any and all liability, loss, cost, expense, and attorneys' fees incurred or to be incurred by Travelers as a result of its having executed the Bonds; and

c.  for reasonable attorneys' fees, cost of suit, and any other relief that the Court deems just and proper.

## FOURTH COUNT
### (Exoneration)

21. Paragraphs 1 through 20 are re-alleged with the same force and effect as though set forth at length herein.

22. Modern is primarily obligated to satisfy all obligations arising from the Bonds.

23. Travelers has satisfied its obligations and is exposed to further liability as a result of having executed the Bonds.

24. Travelers is entitled to be exonerated by Modern against and from any and all liability or loss arising from the Bonds.

25. Modern has failed to honor its obligations to Travelers arising from the Bonds.

WHEREFORE, Travelers demands judgment against Modern:

a. for an order compelling Modern to indemnify and exonerate Travelers against and from any and all liability or loss arising from the Bonds;

b. for an order declaring Modern liable to Travelers for any and all liability, loss, cost, expense, or attorneys' fees incurred or to be incurred by Travelers as a result of its having executed the Bonds;

c. for an order compelling Modern to perform its obligations under the Bonded Contract and the Bonds; and

d. for reasonable attorneys' fees, cost of suit, and any other relief that the Court deems just and proper.

## FIFTH COUNT
### (Trust Fund Violations and Accounting)

26. Paragraphs 1 through 25 are re-alleged with the same force and effect as those set forth at length herein.

27. All of the Bonded Contract funds are and were trust funds either by operation of contract or by operation of law, or both.

28. On information and belief, the Indemnitors breached their fiduciary duties because they received money or proceeds under the Bonded Contracts and failed to use such money or other proceeds for the purposes of performing the Bonded Contracts and discharging the obligation(s) of those performing under the Bonded Contracts.

29. As a result of the Indemnitors' breach of their trust fund obligations, Travelers has been damaged.

WHEREFORE, Travelers demands judgment against the Indemnitors, jointly and severally:

    a. for subrogation in an amount equal to any trust funds that the Indemnitors fail to pay;

    b. for an order compelling the Indemnitors to account for all funds received by them or any of them on the Bonded Contracts;

    c. for an order compelling each Indemnitor to perform his or her obligations to Travelers under the Indemnity Agreement and the Bonds;

    d. for damages, together with appropriate interest thereon;

    e. for an order compelling the Indemnitors to furnish Travelers with any and all information concerning the obligations incurred in connection with the Bonded Contracts;

    f. for an order compelling the Indemnitors to permit Travelers to examine and copy the books, records and accounts of the Indemnitors; and

g.    for reasonable attorneys' fees, costs of suit and other relief that the Court deems just and proper.

        McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
        Attorneys for Plaintiff, The Travelers Indemnity Company, successor in interest by merger to Gulf Insurance Company

By: _____

Dated:  May 21, 2007
          New York, New York

        Scott A. Levin (SL-9041)
        88 Pine Street – 24th Floor
        New York, New York 10005
        (212) 483-9490

# Exhibit A



## Gulf Insurance Group
A member of citigroup

3055 Lebanon Road, Suite 3-1100, Building Three
Nashville, Tennessee 37214

### GENERAL AGREEMENT OF INDEMNITY

This Agreement entered into by and between the undersigned, herein called the Indemnitors, and Gulf Insurance Company, Select Insurance Company, Atlantic Insurance Company with Offices in Nashville, Tennessee, herein called the Company witnesseth:

WHEREAS, in the transaction of business, certain bonds, undertakings and other writings obligatory in the nature of a bond have heretofore been, and may hereafter be, required by, for, or on behalf of the Indemnitors or any one or more of the parties included in the designation Indemnitors, and application has been made and will hereafter be made to the Company to execute such bonds, and as a prerequisite to the execution of such bond or bonds, the Company requires complete indemnification.

NOW, THEREFORE, in consideration of the premises, and the payment by the Company of the sum of One ($1.00) Dollar to each of the Indemnitors, receipt whereof is hereby acknowledged, and for other good and valuable considerations, the Indemnitors do, for themselves, their heirs, executors, administrators and assigns, jointly and severally, agree with the Company as follows:

1. The Indemnitors will pay to the Company, at its Offices in Dallas, Texas, premiums and charges at the rates, and at the times specified in respect to each such bond in the Company's schedule of rates, which, with any additions, or amendments thereto, is by reference made a part hereof, and will continue to pay the same where such premium or charge is annual, until the Company shall be discharged and released from any and all liability and responsibility upon and from each such bond or matters arising therefrom, and until the Indemnitors shall deliver to the Company at its Offices in Nashville, Tennessee, competent written evidence satisfactory to the Company of its discharge from all liability on such bond or bonds.

2. The Indemnitors will indemnify and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Company may pay or incur in consequence of having executed, or procured the execution of, such bonds, or any renewals or continuations thereof or substitutes therefor, including fees of attorneys, whether on salary, retainer or otherwise, and the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the Indemnitors under this Agreement. In the event of payment by the Company, the Indemnitors agree to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefor to the Company.

3. If the Company shall set up a reserve to cover any claim, suit including Attorney's fees or judgment under any such bond, the Indemnitors will, immediately upon demand, deposit with the Company a sum of money equal to such reserve, such sum to be held by the Company as collateral security on such bond, and such sum and any other money or property which shall have been, or shall hereafter be, pledged as collateral security on any such bond shall, unless otherwise agreed in writing by the Company, be available, in the discretion of the Company, as collateral security on any other or all bonds coming within the scope of this Agreement.

4. The Indemnitors immediately upon becoming aware of any demand, notice, or proceeding preliminary to determining or fixing any liability with which the Company may be subsequently charged under any such bond, shall notify the Company thereof in writing at its Executive Offices in New York, New York.

5. The Company shall have the exclusive right to determine for itself and the Indemnitors whether any claim or suit brought against the Company or the Principal upon any such bond shall be settled or defended and its decision shall be binding and conclusive upon the Indemnitors.

6. If such bond be given in connection with a contract, the Company is hereby authorized, but not required, to consent to any change in the contract or in the plans or specifications relating thereto; to make or guarantee advances or loans for the purposes of the contract without the necessity of seeing to the application thereof, it being understood that the amount of all such advances or loans, unless repaid with legal interest by the Contractor to the Company when due, shall be conclusively presumed to be a loss hereunder; in the event of the abandonment, forfeiture or breach of the contract, or the breach of any bond given in connection therewith, or the failure, neglect or refusal to pay for labor or materials used in the prosecution of the contract, to take possession of the work under the contract and, at the expense of the Indemnitors, to complete the contract, or cause, or consent, to the completion thereof. The Indemnitors hereby assign, transfer, and set over to the Company (to be effective as of the date of any such bond, but only in the event of a default as aforesaid), all of their rights under the contract, including their right, title and interest in and to all subcontracts let in connection therewith; all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for the purposes of the contract, including all materials ordered for the contract, and any and all sums due under the contract at the time of such abandonment, forfeiture, breach, failure, neglect or refusal, or which may thereafter become due, and the Indemnitors hereby authorize the Company to endorse in the name of the payee, and to collect any check, draft, warrant or other instrument made or issued in payment of any such sum, and to disburse the proceeds thereof.

7. That it shall not be necessary for the Company to give the Indemnitors, or any one or more of them, notice of the execution of any such bonds, nor of any fact or information coming to the notice or knowledge of the Company affecting its rights or liabilities, or the rights or liabilities of the Indemnitors under any such bond executed by it, notice of all such being hereby expressly waived.

8. In the event of any claim or demand being made by the Company against the Indemnitors, or any one or more of the parties so designated, by reason of the execution of a bond or bonds, the Company is hereby expressly authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and such settlement or composition shall not affect the liability of any of the others, and we hereby expressly waive the right to be discharged and released by reason of the release of one or more of the joint debtors, and hereby consent to any settlement or composition that may hereafter be made.

9. The Company at its option may decline to execute or participate in, or procure the execution of, any such bonds without impairing the validity of this General Agreement of Indemnity.

10. If the Company procures the execution of such bonds by other companies, or executes such bonds with cosureties, or reinsures any portions of such bonds with reinsuring companies, then all the terms and conditions of this Agreement shall apply and operate for the benefit of such other companies, cosureties and reinsurers as their interests may appear.

11. The liability of the Indemnitors hereunder shall not be affected by the failure of the Principal to sign any such bond, nor by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or the return or exchange of any collateral that may have been obtained and if any party signing this Agreement is not bound for any reason, this Agreement shall still be binding upon each and every other party.

12. This Agreement may be terminated by the Indemnitors, or any one or more of the parties so designated, upon written notice to the Company of not less than ten (10) days, but any such notice of termination shall not operate to modify, bar or discharge the liability of any party hereto, upon or by reason of any and all such obligations that may be then in force.

13. Indemnitors agree that their liability shall be construed as the liability of a compensated Surety, as broadly as the liability of the Company is construed toward its obligee.

14. The word Indemnitors, or personal pronouns used to refer to said word, shall apply regardless of number or gender, and to individuals, partnerships or corporations, as the circumstances require.

15. That no change or modification of or in the terms of this agreement shall be effective unless such change or modification is in writing and signed by the President, a Vice-President, a Secretary, or an Assistant Secretary of the Company.

16. That this Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this Agreement or under law, or in equity.


C. Dobb.
Reviewed
6/11/02
Date

17. At any time, and until such ti    as the liability of the Surety under any and all :    Bonds is terminated, the Surety shall have the right to reasonable access to the books, records, and accounts of the Indemnitor and Indemnitors; and any bank depository, material man, supply house, or other person, firm, or corporation when requested by the Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Indemnitor, the condition of the performance of such contracts and payments of accounts.

18. In the event of any breach, delay or default asserted by the obligee in any said Bonds, or the Contractor has suspended or ceased work on any contract or contracts covered by any said Bonds, or failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Contractor's conviction for a felony, imprisonment, incompetency, insolvency, or bankruptcy of the Contractor, or the appointment of a receiver or trustee for the Contractor, or the property of the Contractor, or in the event of an assignment for the benefit of creditors of the Contractor, or if any action is taken by or against the Contractor under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Contractor under said Act, or if any action is taken by or against the Contractor under the insolvency laws of any state, possession, or territory of the United States, the Surety shall have the right, at its option and in its sole discretion, and is hereby authorized, with or without exercising any other right or option conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under any contract or contracts covered by any said Bonds, and at the expense of the Contractor and Indemnitors to complete or arrange for the completion of the same, and the Contractor and Indemnitors shall promptly upon demand pay to the Surety all losses, and expenses so incurred.

19. THE INDEMNITORS HEREBY ACKNOWLEDGE THAT THIS AGREEMENT IS INTENDED TO COVER ANY BONDS (WHETHER OR NOT COVERED BY ANY APPLICATION SIGNED BY ANY ONE OR MORE OF THE INDEMNITORS – SUCH APPLICATION TO BE CONSIDERED BETWEEN THE PARTIES HERETO AS MERELY SUPPLEMENTARY TO THIS GENERAL AGREEMENT OF INDEMNITY) HERETOFORE OR HEREAFTER EXECUTED BY THE COMPANY ON BEHALF OF THE INDEMNITORS, OR ANY ONE OF THEM (WHETHER CONTRACTING ALONE OR AS A JOINT OR CO-ADVENTURER), FROM TIME TO TIME, AND OVER AN INDEFINITE PERIOD OF YEARS, UNTIL THIS AGREEMENT SHALL BE CANCELED IN ACCORDANCE WITH THE TERMS HEREOF.

WE HAVE READ THIS GENERAL AGREEMENT OF INDEMNITY CAREFULLY, THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OUR OBLIGATIONS AS ABOVE SET FORTH.

IN TESTIMONY WHEREOF, the Indemnitors have hereunto set their hands and affixed their seals this _14_ day of _May_, _2002_

Addresses:

120 49th Street, Brooklyn, NY 11232

Principal: Modern Industries, Inc.

By: _____ (L.S.)
Ronen Kozokhar, President

By: _____ (L.S.)
Ronen Kozokbar, Individual

By: _____ (L.S.)
Alla Krasner, Individual

By: _____ (L.S.)
Mark Karagach, Individual

IMPORTANT: ALL SIGNATURES MUST BE ACKNOWLEDGED ON PAGE 4 AND 5 OF THIS FORM. ALL DATES ON PAGES 3, 4, AND 5 MUST COINCIDE. COMPLETE ADDRESS, INCLUDING ZIP CODE, MUST BE GIVEN FOR ALL INDEMNITORS. INDIVIDUAL INDEMNITORS MUST FURNISH ADDRESS OF PERMANENT RESIDENCE. (ATTACH SEPARATE SHEET FOR ADDRESSES, IF NECESSARY.)

Corporate Acknowledgement

State of _New York_
County of _Kings_                                    SS:

On this _14_ day of _May_, _2002_, before me personally came
Ronen Kozokhar to me known, who, being by me duly sworn, did depose and
say that he resides in _____, that he is the _President_ of
_____ the corporation which executed the foregoing instrument; that he knows
the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order
of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

_Sarra Pronshtein_
Notary Public

SARRA PRONSHTEIN
Notary Public, State of New York
No. 24-...
Q...
Commission... Apr 8 2003

Corporate Acknowledgement

State of _____
County of _____                                    SS:

On this _____ day of _____, _____, before me personally came
_____ to me known, who, being by me duly sworn, did depose and
say that he resides in _____, that he is the _____ of
_____ the corporation which executed the foregoing instrument; that he knows
the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order
of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

_____
Notary Public

Corporate Acknowledgement

State of _____
County of _____                                    SS:

On this _____ day of _____, _____, before me personally came
_____ to me known, who, being by me duly sworn, did depose and
say that he resides in _____, that he is the _____ of
_____ the corporation which executed the foregoing instrument; that he knows
the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by order
of the Board of Directors of the said corporation, and that he signed his name to the said instrument by like order.

_____
Notary Public

Partnership Acknowledgement

State of _____
County of _____                                    SS:

On this _____ day of _____, _____, before me personally came
_____ to me known, and known to me to be one of the firm
of _____ and acknowledged that he executed the foregoing instrument as the act
of the said firm.

_____
Notary Public

Page 4 of 5

Individual Acknowledgement

State of New York
County of Kings

On this 14 day of May, 2002, before me personally came Ronen Kozokhar to me known, and known to me to be the individual who executed the foregoing instrument, and acknowledged that he executed the same.

_Sarra Fronshtein_
Notary Public

SARRA FRONSHTEIN
Notary Public, State of New York
No. 24-4832236
Qualified in Kings County
Commission Expires Apr 30 2003

Individual Acknowledgement

State of New York
County of Kings

On this 14 day of May, 2002, before me personally came Alla Krasner to me known, and known to me to be the individual who executed the foregoing instrument, and acknowledged that he executed the same.

_Sarra Fronshtein_
Notary Public

SARRA FRONSHTEIN
Notary Public, State of New York
No. 24-4832236
Qualified in Kings County
Commission Expires Apr 30 2003

Individual Acknowledgement

State of New York
County of Kings

On this 14 day of May, 2002, before me personally came Mark Karagach to me known, and known to me to be the individual who executed the foregoing instrument, and acknowledged that he executed the same.

_Sarra Fronshtein_
Notary Public

SARRA FRONSHTEIN
Notary Public, State of New York
No. 24-4832236
Qualified in Kings County
Commission Expires Apr 30 2003

Individual Acknowledgement

State of
County of

On this _____ day of _____, _____, before me personally came _____ to me known, and known to me to be the individual who executed the foregoing instrument, and acknowledged that he executed the same.

_____
Notary Public